The opinion below is hereby signed.  Dated: May 3,
2005.

S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                           )
                                )
PHILIP WAYNE DORTON,            )   Case No. 04-00151
                                )     (Chapter 7)
            Debtor.             )
                                )
                                )
KEVIN R. McCARTHY, Trustee,     )
                                )
            Plaintiff,          )
                                )
       v.                       )   Adversary Proceeding
                                )   No. 04-10028
BMW BANK OF NORTH AMERICA,      )
                                )
            Defendant.          )

OPINION REGARDING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The plaintiff, Kevin R. McCarthy, is the trustee of the

debtor's estate under chapter 7 of the Bankruptcy Code (11

U.S.C.).  The defendant, BMW Bank of North America ("BMW"), holds

a security interest in a motor vehicle in which the debtor,

Philip Wayne Dorton, owned an interest (which became property of

the estate).  McCarthy seeks to avoid BMW's security interest in

that estate property under 11 U.S.C. § 547(b), and seeks

ancillary relief flowing from that avoidance.  The court

concludes that BMW's security interest was continuously

perfected, within the meaning of that term under 11 U.S.C. §

547(e)(1)(B), from the moment of the debtor's obtaining

possession of the motor vehicle, first under the common law rule

(of first in time, first in right), and then under D.C. Code §

50-1202 by notation of the security interest on the certificate

of title upon issuance of the same.  The other elements of 11

U.S.C. § 547(c)(3) being applicable, that provision excepts BMW's

security interest from avoidance under § 547(b).  Accordingly,

the court will deny McCarthy's motion for summary judgment.

I

The following facts pertinent to the avoidability of the

security interest, except as noted, are not in dispute.

On October 13, 2003, the debtor and another individual,

Joseph Wayne Stone, signed a contract with an automobile dealer

to purchase a motor vehicle.  As part of the contract, the co-

owners executed a security agreement granting the dealer a

security interest in the vehicle to secure payment of the

purchase obligation.  The debtor took possession of the vehicle

on October 13, 2003.

The dealer assigned the contract to BMW.  On behalf of BMW,

the dealer applied to the District of Columbia Department of

Motor Vehicles ("the DMV") for a certificate of title.  BMW

2

contends this occurred on October 13, 2003, the same date on which the debtor took possession of the vehicle.  McCarthy questions whether the application was filed on October 13, 2003, but he has not shown to the contrary.  The application for the certificate of title listed BMW as the lien holder.  BMW did not file a financing statement with the District of Columbia.

On December 24, 2003, more than 20 days after the debtor took possession of the vehicle, the DMV issued a certificate of title for the vehicle noting the security interest of BMW.  The debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on January 30, 2004, which was less than 90 days after BMW's lien was noted on the certificate of title.

## II

The issue is whether 11 U.S.C. § 547(c)(3) excepts BMW's security interest from avoidance as a preference under 11 U.S.C. § 547(b) (whose elements both parties have assumed exist).[1]

---

[1] The security interest was created in the same contractual document in which the debtor agreed to pay for the motor vehicle. However, the security interest attached, and thus the transfer to BMW of the security interest became effective between BMW and the debtor, only once the debtor had rights in the collateral, which was upon delivery of the motor vehicle to the debtor.  See McCarthy v. Imported Cars of Md., Inc. (In re Johnson), 230 B.R. 466, 468-69 (Bankr. D.D.C. 1999).  BMW's opposition to McCarthy's motion has not addressed two issues: whether the debtor was obligated on the debt only once he obtained possession of the vehicle, such that the transfer (perfected, as will be seen, upon delivery of the vehicle to the debtor) was not on account of an antecedent debt, and whether the contemporaneous exchange exception of § 547(c)(1) applies.  However, those issues need not be reached because § 547(c)(3) applies to bar avoidance of the

McCarthy's sole challenge to the applicability of § 547(c)(3) is that perfection of BMW's security interest only occurred when the certificate of title was issued more than 20 days after the debtor took possession of the motor vehicle.  Section 547(c)(3) applies only if the lien "is perfected within twenty days after the debtor receives possession of [the] property." § 547(c)(3)(B).  In turn, § 547(e)(1)(B) provides that "a transfer of . . . property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee[.]"  Whether or not BMW took the appropriate steps to thus perfect its security interest within the twenty-day period is a question that rests on state law.  <u>Fidelity Financial Services, Inc. v. Fink</u>, 522 U.S. 211, 213 n.1 (1998).

In <u>Fink</u>, the creditor mailed the documents required to perfect its security interest in a vehicle 21 days after the debtor took possession of the vehicle.  <u>Id.</u> at 213.  Under the laws of Missouri, a lien on a motor vehicle is perfected on the date of its creation if the creditor files with the director of revenue the required documents within 30 days after the debtor takes possession of the motor vehicle.  <u>Id.</u>  This relation back provision would deem the lien to be perfected on the date that the debtor took possession of the vehicle.  The United States

security interest.

Supreme Court held that Missouri's relation back provision did
not protect the creditor, because all acts by the creditor needed
to perfect its security interest must be completed within the
twenty-day period allotted in § 547(c)(3).  The Court turned to
the language of § 547(e)(1)(B), which states that "a transfer of
a fixture or property other than real property is perfected when
a creditor on a simple contract cannot acquire a judicial lien
that is superior to the interest of the transferee."  The Court
explained that the act that foreclosed the possibility of another
creditor from obtaining a superior interest in the property was
the filing of the application.  Id. at 216.  This is a real time
inquiry that does not rely on legal constructs that turn back the
clock.  Id.  It is possible that another creditor could have
obtained a judicial lien if the application had not been
submitted within the twenty days.  Id.  Therefore, the final act
required to perfect the lien must be completed within the twenty
day period.  Under Fink, then, the court turns to District of
Columbia law to determine if all steps to perfect BMW's lien on
the debtor's vehicle were completed within the twenty-day period.

III

By reason of the definition of perfection in § 547(e)(1)(B),
BMW was required to have obtained a lien entitled to priority
against a hypothetical subsequent judicial lien within the 20-day
period allowed by § 547(c)(3).  As a matter of District of

5

Columbia law, it is "axiomatic that a prior lien gives a prior legal right ('first in time, first in right'), **except where statute varies the common law rule**." District of Columbia v. Franklin Inv. Co., 404 A.2d 536, 540 (D.C. 1979) (emphasis added; citations omitted).[2]

McCarthy does not dispute that BMW acquired a security interest in the vehicle at the time of its sale and delivery to the debtor. Two statutory schemes govern the perfection and priority of security interests in motor vehicles, and may alter the common law rule, namely, the District's certificate of title statute (D.C. Code § 50-1201 *et seq.*) ("Liens on Motor Vehicles or Trailers") and the District's Uniform Commercial Code.[3]

IV

Turning first to the certificate of title statute, D.C. Code § 50-1202 provides in pertinent part:

> **During the time a certificate is outstanding** for any motor vehicle . . . , no lien against such motor vehicle . . . shall be valid except as between the parties and as to other persons having actual notice, unless and until entered on such certificate as

---

[2]  See also Malakoff v. Washington, 434 A.2d 432 (D.C. 1981); District of Columbia v. Hechinger Properties Co., 197 A.2d 157, 160 (D.C. 1964); United States v. McDermott, 507 U.S. 447 (1993) (applying the same as federal common law rule); United States v. New Britain, 347 U.S. 81 (1954) (same).

[3]  The District of Columbia's Uniform Commercial Code ("UCC" or, when necessary to distinguish the District of Columbia UCC from other states' versions, "D.C. UCC") is found at D.C. Code Ann. § 28:1-101 *et seq.* (with its provisions hereafter cited as UCC § 1-101, and so forth).

> hereinafter set forth . . . .  The filing provisions of
> Article 9 of [the UCC] do not apply to liens recorded
> as herein provided, and a lien has no greater validity
> or effect **during the time a certificate is outstanding**
> for the motor vehicle or trailer covered thereby by
> reason of the fact that the lien has been filed in
> accordance with that article.

[Emphasis added.]  Accordingly, once the certificate of title

issued, BMW's lien was effective against a subsequent judicial

lien because BMW's lien was noted on the certificate of title.

The term "outstanding" is not defined in § 50-1202.

However, § 50-1206 contemplates, as relevant here, that only

after the application is examined for correctness and various

fees and taxes are paid, "[t]he Director [of the DMV] shall

thereupon issue the certificate . . . ." and the Recorder of

Deeds then "shall enter the lien information on [the] certificate

. . . ."  Only once that is accomplished, § 50-1206 provides,

"the Director [of the DMV] shall deliver or mail the certificate

to the record holder of the 1st lien shown thereon or his

representative . . . ."[4]  The court concludes that a certificate

is "outstanding" when it has been issued and delivered or mailed

by the DMV to the holder of the first lien.  Thus, no certificate

of title was outstanding here until the DMV mailed or delivered

the certificate to BMW.

---

[4]  In turn, § 50-1209 contemplates that the Recorder of
Deeds may require the person holding the certificate to
"surrender" it when necessary to note a new lien or an assignment
of lien on the certificate.

This conclusion is unaltered by UCC § 9-303(b) which provides:

> (b) Goods become covered by a certificate of title when a valid application for the certificate of title and the applicable fee are delivered to the appropriate authority. Goods cease to be covered by a certificate of title at the earlier of the time the certificate of title ceases to be effective under the law of the issuing jurisdiction or the time the goods become covered subsequently by a certificate of title issued by another jurisdiction.

The term "covered by a certificate of title," as defined in § 9-303(b), is a term of art employed in other provisions addressing such matters as which jurisdiction's law governs perfection (§ 9-303(c)) and the time period during which perfection may be achieved by taking possession (§ 9-313(b)).  The term is not the same thing as a certificate of title being "outstanding" as is made evident by UCC § 9-303, Comment 6 ("External Constraints on This Section") which states in relevant part:

> Ideally, at any given time, only one certificate of title is **outstanding** with respect to particular goods. In fact, however, sometimes more than one jurisdiction **issues** more than one certificate of title with respect to the same goods.

[Emphasis added.]  This comment makes clear that the term "outstanding" refers to when a certificate has been issued and is in the hands of the public, an event external to the rules UCC § 9-303 adopts, and does not refer to the technical issue of when goods "become covered by a certificate of title" for purposes of determining such issues as which jurisdiction's law controls

8

perfection.

Here, no certificate of title was outstanding within the 20-day period of § 547(c)(3). Accordingly, BMW cannot rely on § 50-1202 to contend that it achieved perfection in the 20-day period.

However, § 50-1202 only addresses perfection when a certificate of title is outstanding. If perfection was achieved prior to issuance of the certificate of title, it continued unbroken by virtue of notation of the lien on the certificate of title upon its issuance. Section 50-1202 itself imposes no requirement for perfecting a lien prior to issuance of a certificate of title. Accordingly, unless another statute alters the common law rule of first in time, first in right, BMW's security interest was perfected in the § 547(e)(1)(B) sense pursuant to the common law rule upon attachment of the security interest and until issuance of the certificate of title. The court turns to the UCC to determine whether it alters the common law rule.

V

UCC article 9 ("Secured Transactions") (UCC § 9-101 *et seq*.) applies to a security interest created by an individual debtor in a motor vehicle.[5] Among other topics with respect to security

---

[5]  UCC § 28:9-109 provides in relevant part:

   (a) Except as otherwise provided in subsections (c) and (d), this article applies to:
   (1) A transaction, regardless of its form, that

9

interests, article 9 addresses the priority of security interests

over judicial liens.  With respect to the relative priority of a

security interest and a lien creditor's rights (which include

those of a judicial lien as described by § 547(e)(1)(B)),[6] UCC §

9-317(a) provides in relevant part:

> (a) A security interest . . . is subordinate to
> the  rights of:
> . . .
> > (2) Except as otherwise provided in
> > subsection (e), a person that becomes a lien
> > creditor before the earlier of the time:
> > > (A) The security interest . . . is
> > > perfected[.]

Accordingly, the court will address whether BMW's security

interest was "perfected" as that term is used in the UCC and

hence "perfected" under § 547(e)(1)(B).

A.

Before engaging in that UCC perfection analysis, the court

notes that the UCC term "perfected" does not exhaust the

possibilities of being entitled to priority over a subsequent

---

creates a security interest in personal property or
fixtures by contract;
. . .

None of the exceptions in subsections (c) and (d) apply to a
security interest created by an individual debtor in a motor
vehicle.

[6]  UCC § 9-317 uses the term "lien creditor" but this
includes a judicial lien creditor.  See UCC § 9-102(52)(A)
(defining "lien creditor" as including "[a] creditor that has
acquired a lien on the property involved by attachment, levy, or
the like") and thus is broad enough to include the type of
judicial lien addressed by § 547(e)(1)(B).

10

judicial lien and thus "perfected" under § 547(e)(1)(B).  Under §
547(e)(1)(B) perfected means having attained a lien entitled to
priority over a judicial lien, whereas under the UCC a perfected
security interest is not the only type of security interest
entitled to priority over a judicial lien.

As relevant here, those alternative means of achieving
priority to cover a period in which perfection did not exist
require the filing of a financing statement, and BMW did not file
one.[7]  However, if BMW attained "perfected" status in the UCC
sense without the necessity of filing a financing statement, it

_____

[7]   UCC § 9-317(a) provides in relevant part:

(a) A security interest . . . is subordinate to
the  rights of:
. . .
(2) Except as otherwise provided in
subsection (e), a person that becomes a lien
creditor before the earlier of the time:
(A) The security interest . . . is
perfected; or
(B) One of the conditions specified
in § 28:9-203(b)(3) is met and a
financing statement covering the
collateral is filed.
. . .
(e) Except as otherwise provide in §§ 28:9-320 and
28:9-321, if a person files a financing statement with
respect to a purchase-money security interest before or
within 20 days after the debtor receives delivery of
the collateral, the security interest takes priority
over the rights of a . . . lien creditor which arise
between the time the security interest attaches and the
time of the filing.

BMW never filed a financing statement such as potentially to
bring into play § 9-317(a)(2)(B) or § 9-317(e).

11

attained "perfected" status simultaneously for purposes of §

547(e)(1)(B), and thus those alternative means of attaining

priority are academic.

B.

The term "perfected" under the UCC is addressed by UCC § 9-

308 which provides in relevant part:

> (a) Except as otherwise provided in this section
> and § 28:9-309, a security interest is perfected if it
> has attached and all of the applicable requirements for
> perfection in §§ 28:9-310 through 28:9-316 have been
> satisfied. . . .

In turn, UCC § 9-310 sets forth a general rule that filing of a

financing statement is necessary to achieve perfection, and

exceptions to that rule.  UCC § 9-310 provides in relevant part:

> (a) Except as otherwise provided in subsection (b)
> and § 28:9-312(b), a financing statement must be filed
> to perfect all security interests . . . .
> (b) The filing of a financing statement is not
> necessary to perfect a security interest:
> . . .
> (3) In property subject to a
> statute, regulation, or treaty described
> in § 28:9-311(a)[.]

In turn, UCC § 9-311(a) states that "the filing of a financing

statement is not necessary or effective to perfect a security

interest in property subject to: . . . (2) the provisions of

section 50-1201 *et seq.*"  Motor vehicles are among the species of

property subject to the provisions of § 50-1201 *et seq.*, and,

accordingly, filing of a financing statement is not required (or

effective) to perfect a security interest in a motor vehicle.

12

In <u>McCarthy v. Imported Cars of Md., Inc. (In re Johnson)</u>,
230 B.R. 466 (Bankr. D.D.C. 1999), the parties failed to address
the issue, and the court assumed that, because § 50-1202 sets
forth perfection requirements when a certificate of title *is*
outstanding, a security interest in a motor vehicle could be (and
had to be) perfected by filing a financing statement under the
UCC when a certificate of title *is not* outstanding.  <u>Johnson</u>, 230
B.R. at 470.  Although § 50-1202 sets forth a perfection
requirement of noting a lien on a certificate of title whenever a
certificate of title is outstanding, a motor vehicle is
nevertheless "property subject to § 50-1201 *et seq."* within the
meaning of UCC § 9-311(a)(2) even when no certificate of title is
outstanding.  This is demonstrably the correct interpretation of
§ 9-311(a)(2) because § 50-1206 requires inclusion of lien
information on an application for a certificate of title, and
that obviously occurs before issuance of a certificate of title.

The UCC's election to treat § 50-1201 *et seq.* as providing
the exclusive requirements regarding perfection of a security
interest in a consumer-purchased motor vehicle is reinforced by
UCC § 9-311(b) which provides in relevant part:

> Compliance with the requirements of a statute . . .
> described in subsection (a) for obtaining priority over
> the rights of a lien creditor is equivalent to the
> filing of a financing statement under this article.
> Except as otherwise provided in subsection (d) and §
> 28:9-313 and 28:9-316(d) and (e) for goods covered by a
> certificate of title, a security interest in property
> subject to a statute . . . described in subsection (a)

13

**may be perfected only by compliance with those requirements** . . . .

[Emphasis added.]  The exceptions set forth in the concluding sentence of this provision have no relevance here.  UCC § 9-311(d) only applies to goods held as inventory.  The remaining exceptions address perfection by way of possession.  Even if perfection could be achieved by possession, the UCC does not require such a step to achieve perfection of a security interest in a motor vehicle.  Rather, possession is generally an alternative to the requirement of filing a financing statement when filing would otherwise be required, the only exception the court has found being that in the case of a security interest in money, UCC § 9-312(b)(3) specifies possession to be the only means of perfection.[8]

To recapitulate, UCC §9-310(b) provides that "[t]he filing of a financing statement is not necessary to perfect a security interest" in property subject to UCC § 9-311(a), and UCC § 9-311(a) provides that "the filing of a financing statement is not necessary or effective to perfect a security interest in [a motor vehicle]."  UCC § 9-311(b) then  provides that except when a

---

[8]  Once BMW applied for a certificate of title, it is debatable whether it could have perfected its security interest by taking possession.  See UCC §§ 9-303(b), 9-313(b), and 9-316(d) which suggest that once an application for a certificate of title is filed, perfection via possession is relevant only when a certificate of title is applied for in the District after the security interest was already perfected under the laws of another state.

secured party perfects by way of possession (a non-required method of perfection), a security interest in a motor vehicle may be perfected only by compliance with the requirements of § 50-1201 *et seq.*[9] When a secured party has complied with the requirements of § 50-1201 *et seq.* for perfecting a security interest in a motor vehicle, no provision of the UCC requires the secured party to take any other steps--whether obtaining possession or some other act--in order to perfect its security interest in the motor vehicle.

Accordingly, a security interest in a motor vehicle is perfected (in the UCC sense) once the security interest has attached so long as the holder of the interest has complied with all requirements imposed by § 50-1201 *et seq.* for perfection. The motor vehicle lien statute never specifically uses the term "perfection" but the Comment to UCC § 9-311 clarifies what "perfection" under the motor vehicle lien statute entails:

> 5. **Compliance with Perfection Requirements of Other Statute.** Subsection (b) makes clear that compliance with the perfection requirements (i.e., *the requirements for obtaining priority over a lien creditor*), but not other requirements, of a statute . . . described in subsection (a) is sufficient for perfection under this Article.  Perfection of a

---

[9] This restriction is reinforced by UCC § 9-309(1)--an exception under UCC § 9-310(b) to the requirement of filing a financing statement--which provides, as material here, that perfection arises upon attachment in the case of "[a] purchase-money security interest in consumer goods, except as otherwise provided in § 28:9-311(b) with respect to consumer goods that are [motor vehicles]."

security interest under such a statute . . . has all
the consequences of perfection under this Article.

[Italics added.]  In this regard, when a certificate of title is
outstanding, § 50-1202 makes a security interest not noted on
that certificate ineffective against third parties without
knowledge.  Implicitly, when such a security interest *is* noted on
an outstanding lien it takes priority over a subsequent judicial
lien.  However, during the period prior to issuance of the
certificate of title, § 50-1201 *et seq.* are silent regarding the
issue of perfection and thus leave the common law rule of first
in time, first in right intact.

That this is the case is made evident by the failure of the
certificate of title statute specifically to address priority *vis
a vis* a judicial lien of a security interest once noted on a
certificate of title.  The statute excludes a judicial lien (or,
to quote the statute, a "lien acquired in any judicial
proceeding") from the definition of "lien."  See D.C. Code § 50-
1201(f)(2) (including security interests in definition of "lien"
but excluding judicial liens).  The statute then addresses the
priority of liens (that is, such liens as security interests but
not judicial liens) in D.C. Code § 50-1203.  The obvious question
is "Where is the provision addressing priority of a security
interest noted on a certificate of title *vis a vis* a subsequent
judicial lien?"  There is none.  Instead, the question of
priority is addressed by the common law rule.

16

This is implicit in § 50-1202's provision that "[d]uring the time a certificate of title is outstanding . . . no [security interest] against [the] motor vehicle . . . shall be valid except as between the parties and as to other persons having actual notice, unless and until entered on such certificate . . . ." There was no need expressly to address what happens to a security interest *vis a vis* a judicial lien acquired after the security interest is noted on the certificate of title: the common law provides the rule.  Similarly, prior to the issuance of a certificate of title, the statute is silent regarding priorities, and the common law provides the rule.

### C.

To recapitulate, the motor vehicle lien statute, § 50-1201 *et seq.*, imposes no requirements for perfection during the period commencing with attachment of a security interest in a motor vehicle and ending with issuance of a certificate of title. Neither does the UCC impose any requirement for perfection during that period (as it leaves that subject entirely to the motor vehicle lien statute).  Accordingly, it follows that the common law rule of first in time, first in right applies to accord priority to such a security interest during that period.

Stated differently, during the gap period between attachment of a security interest in a motor vehicle in the District of Columbia and issuance of the certificate of title under § 50-1201

*et seq.,* the absence of any perfection requirements in § 50-1201

*et seq.* results in the security interest being perfected under

UCC § 9-308 and thus entitled under § 9-317(a)(2)(A) to priority

over a subsequent judicial lien.

VI

As discussed above, BMW's security interest attained

perfected status upon the debtor's acquiring the motor vehicle

and until the issuance of the certificate of title.  Once the

certificate of title issued, BMW's security interest was

perfected under § 50-1201 by way of being noted on the

certificate of title.  Accordingly, BMW has had a continuously

perfected security interest from the moment title passed to the

debtor.  <u>See</u> UCC § 9-308(c) ("A security interest . . . is

perfected continuously if it is originally perfected by one

method under this article and is later perfected by another

method under this article, without an intermediate period when it

was unperfected.").

VII

McCarthy could argue that once the certificate of title was

outstanding, only notation of the security interest on the

certificate of title could perfect the security interest, and

that because that occurred more than 20 days after the debtor

obtained possession of the vehicle, § 547(c)(3) cannot be deemed

applicable.  In other words, the issue remains whether under

18

Fink, § 9-308(c) amounts to a retroactive perfection provision.

Fink does not apply here. Fink dealt with a case in which there was a period of time when, under state law, a judicial lien could have been obtained against a motor vehicle, and the later perfection of the lien beyond the 20-day mark of § 547(c)(3) could not bring the security interest into the safe harbor of § 547(c)(3) via the state law's provision for retroactive effectiveness of the perfection. Here, in contrast, there never was a period when the security interest was not perfected. At every step, BMW's security interest was perfected and BMW had taken steps to assure that it would remain perfected. All § 547(c)(3) requires is that the security interest "is perfected" within the 20-day period, which it was.

Had BMW allowed that perfection to lapse, by not causing the security interest to be noted on the certificate of title when it first issued, a different case would be presented.[10] However,

_____

[10] If such a lapse in perfection continues until the petition date, the security interest would be avoidable under 11 U.S.C. § 544 (vesting the trustee with the powers of a hypothetical judicial lien creditor). If the security interest is re-perfected prior to the petition date, making § 544 inapplicable, the re-perfection would be a new transfer (by reason of enabling the creditor to escape the effects of § 544) for purposes of § 547(b), and § 547(c)(3) would not except that transfer from avoidance under § 547(b) if the re-perfection occurred more than 20 days after delivery of the collateral to the debtor. Thus the requirement in § 547(c)(3) that the lien "is perfected" implicitly includes a requirement that any re-perfection after a lapse in perfection must occur within § 547(c)(3)(B)'s 20-day window.

here there was never any such lapse in perfection.

VIII

States tend to have one of three statutory arrangements for

using certificate of title statutes to perfect security interests

in vehicles.  In re Farnham, 57 B.R. 241, 245 (Bankr. D. Vt.

1986).  The "indication," "delivery," and "dual" schemes are as

follows:

> Presently, twenty-two states and the District of
> Columbia have enacted certificate of title systems that
> make the perfection event either the indication of the
> lien or the certificate of title or the issuance of the
> certificate of title after indication.  Twenty-four
> states have certificate of title laws that make mere
> delivery of the appropriate papers and fees to the
> proper officer the act of perfection, even if the
> certificate of title is never noted or issued. . . .
> Finally, three states have "dual system" certificate of
> title perfection laws that require both the filing of a
> financing statement and the use of the certificate of
> title.

Id. at 245 (citing Note, Secured Transactions: Certificate of

Title--Delivery or Notation?  The Lender's Dilemma, 37 Okla. L.

Rev. 618, 622 (1984) (footnotes omitted)).

There are decisions under other state statutes adopting an

exclusively "indication" means of perfection which would support

McCarthy's position here if the District's statute were of the

same character.  In Union Bank & Trust Co., Erie v. Baker (In re

Tressler), 771 F.2d 791 (3rd Cir. 1985), the court dealt with a

Pennsylvania motor vehicle statute which provided in what the

court of appeals characterized as unambiguous language that "[a]

20

security interest is perfected by notation thereof by the

department on the certificate of title for the vehicle" and

another provision of the motor vehicle statute provided that the

method thereby provided for perfecting a security interest was

exclusive.  The court of appeals offered this colorful language:

> We are unpersuaded by the bank's argument that the
> Department's lack of efficiency in issuing titles
> should somehow provide the basis for an exception to
> the federal 10 day perfection requirement [in an
> earlier version of the Bankruptcy Code] .  The solution
> to this problem, if such a problem indeed exists,
> should be pursued in Harrisburg by seeking appropriate
> legislative action, rather than by seeking, in this
> court, an exception to the clear congressional command
> in § 547(c)(3)(B).

Tressler, 771 F.2d at 793.[11]  If the District's motor vehicle

statute were identical to the statute involved in Tressler or to

the Tennessee statute involved in several decisions reaching a

similar conclusion,[12] the court would unhesitatingly follow that

---

[11] Not surprisingly, in 1990 the Pennsylvania legislature
amended its code to create a "delivery" statute to prevent this
dangerous gap in time.  See 75 Pa. Cons. Stat. Ann. § 1132(b);
First Nat'l Bank of Penn. v. Cech (In re Ambrose), 148 B.R. 244,
247 (Bankr. W.D. Pa. 1992).

[12] See Waldschmidt v. Smith (In re York), 43 B.R. 36
(Bankr. M.D. Tenn. 1984) (no perfection in absence of notation of
the lien on the title even if a properly submitted application is
lost by officials of the State of Tennessee and the applicant is
blameless); Walker v. Ford Motor Credit Co. (In re Clark), 112
B.R. 226, 230 (Bankr. E.D. Tenn. 1990) (no relation back if
application has been rejected); Keep Fresh Filters, Inc. v.
Reguli, 888 S.W.2d 437, 445 (Tenn. Ct. App. 1994) ("Merely
submitting an application or a certificate of title or to note a
lien on a certificate of title does not result in perfection of a
security interest if the filing does not lead to a recordation of
the lien on the title.").

decision, and reject BMW's argument that <u>Huenekens v. Abruzzese</u>
<u>(In re Abruzzese)</u>, 252 B.R. 341 (Bankr. E.D. Va. 1999), requires
disregard of a plainly written statute making notation the
exclusive means of perfection.

However, the Pennsylvania statute at issue in <u>Tressler</u> and
the Tennessee statute just mentioned, are distinguishable from
the District's certificate of title statute which purports only
to set requirements for perfection when a certificate of title is
outstanding.  Prior to issuance of the certificate of title, the
District's statute does not proscribe perfection via the common
law rule.

IX

Based on the court's present view of the law, summary
judgment must be denied.  The foregoing, however, sets forth an
analysis not raised by BMW.  Accordingly, McCarthy will be given
an opportunity to respond to the analysis before the court
decides whether to dismiss the adversary proceeding.  An order
follows.

[*Signature appears above*]
S. Martin Teel, Jr.
United States Bankruptcy Judge

Copies to:

Kevin R. McCarthy, Esq.

Ronald G. DeWald, Esq.

U.S. Trustee