The Opinion below is hereby signed.  Dated: June 21, 2005.

_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| PHILIP WAYNE DORTON, | ) | Case No. 04-00151 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| | ) | |
| | ) | |
| KEVIN R. McCARTHY, Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding |
| | ) | No. 04-10028 |
| BMW BANK OF NORTH AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION REGARDING
DISMISSAL OF ADVERSARY PROCEEDING

The plaintiff, Kevin R. McCarthy, is the trustee of the debtor's estate under chapter 7 of the Bankruptcy Code (11 U.S.C.).  The defendant, BMW Bank of North America ("BMW"), holds a security interest in a motor vehicle in which the debtor, Philip Wayne Dorton, owned an interest (which became property of the estate).  McCarthy seeks to avoid BMW's security interest in that estate property as a preference under 11 U.S.C. § 547(b),

and seeks ancillary relief flowing from that avoidance.   In a
prior order denying McCarthy's motion for summary judgment, the
court directed McCarthy to show cause why this adversary
proceeding ought not be dismissed based on an analysis largely
repeated below.   McCarthy has not convinced the court that its
prior analysis was in error.

The court concludes that BMW's security interest was
continuously perfected, within the meaning of that term under 11
U.S.C. § 547(e)(1)(B), from the moment the debtor obtained
possession of the car, first under the common law rule of first
in time, first in right, and then, upon issuance of the
certificate of title for the car, under D.C. Code § 50-1202 by
reason of the security interest being noted on the certificate of
title prior to its issuance.   Accordingly, no preference existed
in this case.   The court rejects McCarthy's position that
perfection only occurred once the security interest was noted on
the certificate of title.

I

Except as noted, the pertinent facts are not in dispute.   On
October 13, 2003, the debtor and another individual signed a
contract with an automobile dealer to purchase a car.   As part of
the contract, the co-owners executed a security agreement
granting the dealer a security interest in the car to secure
payment of the purchase obligation.   The debtor took possession

2

of the car on October 13, 2003.

The dealer assigned the contract to BMW.  On behalf of BMW, the dealer applied to the District of Columbia Department of Motor Vehicles ("the DMV") for a certificate of title.[1]  The application for the certificate of title listed BMW as the lien holder.  BMW did not file a financing statement with the District of Columbia.

On December 24, 2003, more than 20 days after the debtor took possession of the car, the DMV issued a certificate of title for the car noting the security interest of BMW.  The debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on January 30, 2004, which was less than 90 days after BMW's lien was noted on the certificate of title.

II

BMW's security interest attached when the debtor granted the security interest on October 13, 2003, and took possession of the car on that date.[2]  The court concludes below that BMW's security

---

[1]  McCarthy questions when the application was filed, but the outcome is the same regardless of when the application was filed.

[2]  The security interest was created in the same contractual document in which the debtor agreed to pay for the car.  However, the security interest attached, and thus the transfer to BMW of the security interest became effective between BMW and the debtor, only once the debtor had rights in the collateral, which was upon delivery of the car to the debtor.  See McCarthy v. Imported Cars of Md., Inc. (In re Johnson), 230 B.R. 466, 468-69 (Bankr. D.D.C. 1999).

interest was continuously perfected from that moment.

Accordingly, under 11 U.S.C. § 547(e)(1)(B), (2)(A), and (3), the

transfer of the security interest occurred on October 13, 2003.

Section 547(e)(1)(B) provides:

> a transfer of . . . property other than real property
> is perfected when a creditor on a simple contract
> cannot acquire a judicial lien that is superior to the
> interest of the transferee[.]

Under § 547(e)(2)(A) and (3), as relevant here:

> a transfer is made . . . at the time such transfer
> takes effect between the transferor and the transferee,
> if such transfer is perfected at, or within 10 days
> after, such time . . . [and] the debtor has acquired
> rights in the property transferred.

October 13, 2003, was more than 90 days before the filing of the

petition commencing the bankruptcy case.  Accordingly, an

avoidable transfer does not exist because the transfer was not

"made . . . on or within 90 days before the date of the filing of

the petition" as required by § 547(b)(4)(A) in the case of a

transfer other than one to or for the benefit of a creditor who

was an insider.  McCarthy has not alleged that BMW (or the dealer

who assigned the security interest to it) was an insider.

4

McCarthy contends that perfection of BMW's security interest only occurred when the certificate of title was issued.[3]  Whether or not BMW took any required steps to perfect its security interest as of the delivery of the vehicle to the debtor on October 13, 2003, is a question that rests on state law. <u>Fidelity Financial Services, Inc. v. Fink</u>, 522 U.S. 211, 213 n.1 (1998).  The court thus turns to District of Columbia law.

### III

By reason of the definition of perfection in § 547(e)(1)(B), BMW's security interest was perfected only once it was entitled to priority against a hypothetical subsequent judicial lien.  As a matter of District of Columbia law, it is "axiomatic that a prior lien gives a prior legal right ('first in time, first in right'), **except where statute varies the common law rule**." <u>District of Columbia v. Franklin Inv. Co.</u>, 404 A.2d 536, 540

---

[3]  Whether addressed in the context of § 547(b)(4)(A) (no transfer within 90 days of the petition) or § 547(c)(3) (an exception to § 547(b) requiring perfection within 20 days of the debtor's taking possession of the car), the critical issue is whether perfection only occurred when the certificate of title issued.  The parties' initial papers in this proceeding focused on § 547(c)(3).  The 20-day mark under § 547(c)(3) was November 2, 2003, less than 90 days prior to the filing of the petition on January 30, 2003.  However, § 547(c)(3)--as an exception to § 547(b)--becomes irrelevant in light of the court's conclusion that perfection, and hence transfer, of the security interest occurred more than 90 days before the filing of the petition such that § 547(b) does not apply.

(D.C. 1979) (emphasis added; citations omitted).[4]

McCarthy does not dispute that BMW acquired a security interest in the car at the time of its sale and delivery to the debtor.  Two statutory schemes govern the perfection and priority of security interests in motor vehicles, and may alter the common law rule, namely, the District's certificate of title statute (D.C. Code § 50-1201 *et seq.*) ("Liens on Motor Vehicles or Trailers") and the District's Uniform Commercial Code.[5]

## IV

Turning first to the certificate of title statute, D.C. Code § 50-1202 provides in pertinent part:

> **During the time a certificate is outstanding** for any motor vehicle . . . , no lien against such motor vehicle . . . shall be valid except as between the parties and as to other persons having actual notice, unless and until entered on such certificate as hereinafter set forth . . . .  The filing provisions of Article 9 of [the UCC] do not apply to liens recorded as herein provided, and a lien has no greater validity or effect **during the time a certificate is outstanding** for the motor vehicle or trailer covered thereby by reason of the fact that the lien has been filed in accordance with that article.

---

[4]   See also  Malakoff v. Washington, 434 A.2d 432 (D.C. 1981); District of Columbia v. Hechinger Properties Co., 197 A.2d 157, 160 (D.C. 1964);  United States v. McDermott, 507 U.S. 447 (1993) (applying the same as federal common law rule); United States v. New Britain, 347 U.S. 81 (1954) (same).

[5]   The District of Columbia's Uniform Commercial Code ("UCC" or, when necessary to distinguish the District of Columbia UCC from other states' versions, "D.C. UCC") is found at D.C. Code Ann. § 28:1-101 *et seq.* (with its provisions hereafter cited as UCC § 1-101, and so forth).

[Emphasis added.]  Accordingly, once the certificate of title issued, BMW's lien was effective against a subsequent judicial lien because BMW's lien was noted on the certificate of title. In the period prior to the issuance of the certificate, (1) no certificate of title was outstanding, and (2) the certificate of title statute imposed no rule altering the common law rule of priority.

1.

The certificate of title was "outstanding" only once it issued.  The term "outstanding" is not defined in § 50-1202. However, § 50-1206 contemplates, as relevant here, that only after the application is examined for correctness and various fees and taxes are paid, "[t]he Director [of the DMV] shall thereupon issue the certificate . . . ." and the Recorder of Deeds then "shall enter the lien information on [the] certificate . . . ."  Only once that is accomplished, § 50-1206 provides, "the Director [of the DMV] shall deliver or mail the certificate to the record holder of the 1st lien shown thereon or his representative . . . ."[6]  The court concludes that a certificate is "outstanding" when it has been issued and delivered or mailed by the DMV to the holder of the first lien.  Thus, no certificate

---

[6]  In turn, § 50-1209 contemplates that the Recorder of Deeds may require the person holding the certificate to "surrender" it when necessary to note a new lien or an assignment of lien on the certificate.

of title was outstanding here until the DMV mailed or delivered

the certificate to BMW.

This conclusion is unaltered by UCC § 9-303(b) which

provides:

> (b) Goods become covered by a certificate of title
> when a valid application for the certificate of title
> and the applicable fee are delivered to the appropriate
> authority.  Goods cease to be covered by a certificate
> of title at the earlier of the time the certificate of
> title ceases to be effective under the law of the
> issuing jurisdiction or the time the goods become
> covered subsequently by a certificate of title issued
> by another jurisdiction.

The term "covered by a certificate of title," as defined in § 9-

303(b), is a term of art employed in other provisions addressing

such matters as which jurisdiction's law governs perfection (§ 9-

303(c)) and the time period during which perfection may be

achieved by taking possession (§ 9-313(b)).  The term is not the

same thing as a certificate of title being "outstanding" as is

made evident by UCC § 9-303, Comment 6 ("External Constraints on

This Section") which states in relevant part:

> Ideally, at any given time, only one certificate of
> title is **outstanding** with respect to particular goods.
> In fact, however, sometimes more than one jurisdiction
> **issues** more than one certificate of title with respect
> to the same goods.

[Emphasis added.]  This comment makes clear that the term

"outstanding" refers to when a certificate has been issued and is

in the hands of the public, an event external to the rules UCC §

9-303 adopts regarding goods being covered by a certificate of

title.  The term "outstanding" does not refer to the technical

issue of when goods "become covered by a certificate of title"

for purposes of determining such issues as which jurisdiction's

law controls perfection.[7]

### 2.

Section 50-1202 itself imposes no requirement for perfecting

a lien prior to issuance of a certificate of title.  Accordingly,

unless another statute alters the common law rule of first in

time, first in right, BMW's security interest was perfected in

the § 547(e)(1)(B) sense pursuant to the common law rule upon

attachment of the security interest and until issuance of the

certificate of title.  The court turns to the UCC to determine

whether it alters the common law rule.

### V

UCC article 9 ("Secured Transactions") (UCC § 9-101 *et seq.*)

applies to a security interest created by an individual debtor in

---

[7]  In <u>Albert v. Nissan Motor Acceptance Corp. (In re
Waiters)</u>, Civil Action No. 02-01588 (D.D.C. July 12, 2004), the
district court assumed, without any analysis, that when a car
becomes "covered by a certificate of title" a certificate of
title is "outstanding."  The court rejects that conclusion based
on the foregoing analysis.  In responding to that analysis as set
forth in the court's earlier decision, McCarthy states that he
"tends to agree more with the Bankruptcy Court's view that a
certificate is not outstanding until issued than with the
District Court's apparent view that a certificate can be
outstanding before issued."  McCarthy's Memorandum Responding to
Court's Order at 6-7.

a motor vehicle.[8]  Among other topics with respect to security

interests, article 9 addresses the priority of security interests

over judicial liens.  With respect to the relative priority of a

security interest and a lien creditor's rights (which include

those of a judicial lien as described by § 547(e)(1)(B)),[9] UCC §

9-317(a) provides in relevant part:

> (a) A security interest . . . is subordinate to
> the  rights of:
> . . .
>        (2) Except as otherwise provided in
> subsection (e), a person that becomes a lien
> creditor before the earlier of the time:
>            (A) The security interest . . . is
> perfected[.]

The court concludes below that from the moment the debtor took

possession of the car, BMW's security interest was "perfected" as

that term is used in the UCC--one of the UCC ways for a security

---

[8]  UCC § 28:9-109 provides in relevant part:

> (a) Except as otherwise provided in subsections
> (c) and (d), this article applies to:
> (1) A transaction, regardless of its form, that
> creates a security interest in personal property or
> fixtures by contract;
>        . . .

None of the exceptions in subsections (c) and (d) apply to a
security interest created by an individual debtor in a motor
vehicle.

[9]  UCC § 9-317 uses the term "lien creditor" but this
includes a judicial lien creditor.  See UCC § 9-102(52)(A)
(defining "lien creditor" as including "[a] creditor that has
acquired a lien on the property involved by attachment, levy, or
the like") and thus is broad enough to include the type of
judicial lien addressed by § 547(e)(1)(B).

interest to attain priority over a judgment lien--and hence was

"perfected" as that term is used in § 547(e)(1)(B).[10]

A.

The term "perfected" under the UCC is addressed by UCC § 9-

308 which provides in relevant part:

> (a) Except as otherwise provided in this section
> and § 28:9-309, a security interest is perfected if it
> has attached and **all of the applicable requirements for
> perfection in §§ 28:9-310 through 28:9-316 have been
> satisfied.** . . .

[Emphasis added.]  McCarthy argues that:

> The exceptions referred to in D.C. § 29-308(a) do
> not apply here.  Therefore, the section necessarily
> means that the only way to perfect a security interest
> in the Debtor's car is to comply with the applicable
> perfection requirements in sections 9-310 through 9-
> 316.  In other words, there is no room within this
> language for the common law to provide an alternative
> way to perfect a security interest in a car.

However, if §§ 9-310 through 9-316 impose no "applicable

requirements for perfection," the security interest is perfected

once it has attached: in other words, the UCC retains the common

law rule of first in time, first in right in that rare

circumstance.  As <u>Malakoff</u>, 434 A.2d at 434, indicates:

> The Uniform Commercial Code (UCC), effective in the District
> of Columbia on January 1, 1965, **preserves this common-law
> principle** [of first in time, first in right], but refines it

---

[10]   The UCC has alternative means--beyond UCC "perfection"--
for attaining priority over a judgment lien (and hence for
attaining "perfection" in the § 547(e)(1)(B) sense).  <u>See</u>, <u>e.g.</u>,
UCC §§ 9-317(a)(2)(B) and § 9-317(e).  But BMW does not rely on
any of those alternative means of attaining priority.

> through the **general rule** that a party who first notifies the
> public of his security interest in a particular piece of
> property, either through possession of the collateral or
> filing of his financing statement (so-called "perfection"),
> prevails over all other parties with a security interest in
> the same collateral, regardless of which party first
> acquired the security interest itself (so-called
> "attachment").

[Emphasis added; citation omitted.]  The UCC may have general

requirements for perfection that alter the common law rule, but

when, as here, those requirements are not imposed with respect to

a particular security interest because the UCC looks to another

statute to determine the perfection issue, the common law rule

supplies the priority rule if the other statute itself imposes no

additional requirements for perfection beyond attachment.

As will be seen, the UCC imposes only the requirements of §

50-1201 *et seq.* for perfection of a security interest in a motor

vehicle, and makes inapplicable the UCC requirements for

perfection (beyond attachment of the security interest to the

collateral) that would otherwise apply.  As already noted in part

IV, § 50-1201 *et seq.* impose no requirement for perfection when

no certificate of title is outstanding, and the common law rule

of first in time, first in right thus controls priority until a

certificate of title is issued.  Thus, BMW's security interest

was perfected upon attachment and until issuance of the

certificate of title.

12

B.

UCC § 9-310 sets forth a general rule that filing of a
financing statement is necessary to achieve perfection, and
exceptions to that rule.  UCC § 9-310 provides in relevant part:

> (a) Except as otherwise provided in subsection (b)
> and § 28:9-312(b), a financing statement must be filed
> to perfect all security interests . . . .
> (b) The filing of a financing statement is not
> necessary to perfect a security interest:
> > . . .
> > (3) In property subject to a
> > statute, regulation, or treaty described
> > in § 28:9-311(a)[.]

In turn, UCC § 9-311(a) states that "the filing of a financing
statement is not necessary or effective to perfect a security
interest in property subject to: . . . (2) the provisions of
section 50-1201 *et seq.*"  Motor vehicles are among the species of
property subject to the provisions of § 50-1201 *et seq.*, and,
accordingly, filing of a financing statement is not required (or
effective) to perfect a security interest in a motor vehicle.
UCC § 9-311(b) provides in relevant part:

> Compliance with the requirements of a statute . . .
> described in subsection (a) for obtaining priority over
> the rights of a lien creditor is equivalent to the
> filing of a financing statement under this article.
> Except as otherwise provided in subsection (d) and §
> 28:9-313 and 28:9-316(d) and (e) for goods covered by a
> certificate of title, a security interest in property
> subject to a statute . . . described in subsection (a)
> **may be perfected only by compliance with those
> requirements** . . . .

[Emphasis added.]

13

As discussed next, (1) § 9-311 applies to motor vehicles even when no certificate of title is outstanding; (2) the existence under UCC 9-311(b) of possession as an alternative means of perfection (beyond compliance with requirements for perfection under § 50-1201 *et seq.*) does not make taking possession a requirement for perfection when all requirements for perfection under § 50-1201 *et seq.* have been taken; (3) the only such requirement under § 50-1201 *et seq.*, as incorporated by the UCC, in the period prior to issuance of the certificate of title is the common law requirement that the security interest have attached prior to the competing lien; and (4) nothing in Comment 5 to UCC § 9-311 alters this result.

1.

Motor vehicles are property "subject to" the provisions of § 50-1201 *et seq.*, within the meaning of UCC § 9-311(a), even when no certificate of title is outstanding.  In <u>McCarthy v. Imported Cars of Md., Inc. (In re Johnson)</u>, 230 B.R. 466 (Bankr. D.D.C. 1999), the parties failed to address the issue, and the court assumed that, because § 50-1202 sets forth perfection requirements when a certificate of title *is* outstanding, a security interest in a motor vehicle could be (and had to be) perfected by filing a financing statement under the UCC when a certificate of title *is not* outstanding.  <u>Johnson</u>, 230 B.R. at 470.  That was an erroneous reading of § 9-311(a).  Although §

14

50-1202 sets forth a perfection requirement of noting a lien on a certificate of title whenever a certificate of title *is* outstanding, a motor vehicle is nevertheless "property subject to § 50-1201 *et seq.*" within the meaning of UCC § 9-311(a)(2) even when a certificate of title *is not* outstanding.  This is demonstrably the correct interpretation of § 9-311(a)(2) because § 50-1206 requires inclusion of lien information on an application for a certificate of title, and that obviously occurs before issuance of a certificate of title.

2.

The propriety of focusing on perfection under § 50-1201 *et seq.* is unaltered by the exceptions to § 9-311(b) set forth in its concluding sentence.  Those exceptions, §§ 9-311(d), 9-313, and 9-316(d) and (e), have no relevance here.  UCC § 9-311(d) only applies to goods held as inventory.  The remaining exceptions address perfection by way of possession.  Even if perfection could be achieved by possession,[11] the UCC does not require such a step to achieve perfection of a security interest in a motor vehicle: it suffices to comply with whatever

---

[11] Once BMW applied for a certificate of title, it is debatable whether it could have perfected its security interest by taking possession.  See UCC §§ 9-303(b), 9-313(b), and 9-316(d) which suggest that once an application for a certificate of title is filed, perfection via possession is relevant only when a certificate of title is applied for in the District after the security interest was already perfected under the laws of another state.  However, there is a factual dispute as to when BMW filed the application.

requirements the certificate of title statute imposes for
perfection.

Under the UCC, possession is generally an alternative to the
requirement of filing a financing statement when filing would
otherwise be required, and it is an alternative as well to
compliance with whatever perfection requirements the certificate
of title statute imposes, but it is not mandatory.  The only
instances in which possession is mandatory to achieve perfection
are of no relevance here.[12]

3.

McCarthy notes that Eldon H. Riley, in 1 <u>Security Interests
in Personal Property</u> § 15:1 (Westlaw 2002), describes § 9-311 as
"indicating that compliance with state certificate of title laws
is the exclusive method of perfection" except in certain
instances where a vehicle is inventory or in the secured party's
possession.  McCarthy then argues that "[b]y engrafting a common
law method of perfection [of a security interest] in a car onto
the Uniform Commercial Code, the Court has gone outside the UCC
and the DMV statute," and "the common law method of perfection is
nowhere to be found in Sections 9-310 through 9-316," the

---

[12]  UCC § 9-312(b)(3) specifies possession to be the only
means of perfecting a security interest in money.  UCC § 9-
316(e), dealing with perfection against a purchaser of goods that
have become covered by a certificate of title in a new state
without the security interest being perfected under the new
state's certificate of title statute, requires possession to
perfect.

16

provisions that UCC § 9-308(a) points to as governing when
perfection occurs.

If § 50-1201 *et seq.* are treated as the controlling statute
regarding perfection once a security interest has attached (and
they are so treated by UCC § 9-311(b)), McCarthy's argument must
fail.[13]  As discussed in part IV, <u>Franklin Inv. Co.</u>, 404 A.2d at
540, holds that the common law rule of "first in time, first in
right" controls "except where statute varies the common law
rule," and § 50-1201 *et seq.* do not purport to vary the common
law rule during the period prior to issuance of a certificate of
title.

Even if § 50-1201 *et seq.* are treated as incorporated into
the UCC, with the UCC treated as the controlling statute, the UCC
itself follows the <u>Franklin Inv. Co.</u> approach: UCC § 1-103
provides that "[u]nless displaced by the particular provisions of
this subtitle, the principles of law and equity . . . shall

---

[13]  The certificate of title statute never specifically uses
the term "perfection" but the Comment to UCC § 9-311 clarifies
what "perfection" under the certificate of title statute entails:

> 5.  **Compliance with Perfection Requirements of
> Other Statute.**  Subsection (b) makes clear that
> compliance with the perfection requirements (i.e., *the
> requirements for obtaining priority over a lien
> creditor)*, but not other requirements, of a statute . .
> . described in subsection (a) is sufficient for
> perfection under this Article.  Perfection of a
> security interest under such a statute . . . has all
> the consequences of perfection under this Article.

[Italics added.]

supplement its provisions."  Thus, except when displaced by a
particular provision of the UCC, the common law principle of
"first in time, first in right" continues to answer which lienor
takes priority.  In the case of security interests in cars, the
UCC, with exceptions of no relevance here, leaves the question of
priority over a judgment lien to § 50-1201 *et seq.*  Those
provisions, in turn, do not displace the common law rule of
"first in time, first in right" in the period prior to the
issuance of a certificate of title.  Accordingly, the common law
rule supplies the answer during that period.

McCarthy's argument can fairly be recast as follows:

> Prior to issuance of the certificate of title, BMW
> failed to comply with the only express requirement for
> perfecting a security interest in a car (applicable
> only when a certificate of title is outstanding) of
> noting the security interest on the certificate of
> title.  Therefore, BMW did not comply with the
> requirements of § 50-1201 *et seq.* prior to issuance of
> the certificate of title, and had no perfected security
> interest until the certificate of title issued.

Section 50-1201 could have *expressly* provided that prior to
issuance of a certificate of title, to take priority over a
judicial lien a security interest must have satisfied the common
law requirement that it attached first in time to the car.  If
the statute had expressly so provided, McCarthy would be unable
seriously to contend that BMW had failed to comply with the
certificate of title statute's perfection requirements.  Instead,
by not displacing the common law rule and leaving it intact, §

18

50-1201 *et seq. implicitly* provide that prior to issuance of a certificate of title, the only required step to perfect a security interest in a car is the common law requirement. Compliance with the common law requirement, whether expressly or implicitly set forth by § 50-1201 *et seq.*, constitutes compliance with the requirements of those statutory provisions. Accordingly, the security interest was perfected under UCC § 9-311(b) by reason of complying with the common law requirement.

This analysis is reinforced by the certificate of title statute's letting the common law rule play a role in governing perfection against subsequent judicial liens even after issuance of a certificate of title.  Like the federal tax lien statute (26 U.S.C. § 6323(a)), § 50-1202 of the D.C. certificate of title statute uses the term "valid" to address the issue of priority against a subsequent judgment lien.[14]  Once a security interest is noted on the outstanding certificate of title, it is "valid . . . as to other persons" including a holder of a judgment lien, but that does not answer the issue of priority over a judgment lien arising after such notation of the security interest: the

---

[14]  The statute expressly uses the term priority only in addressing the priority of certain liens other than judicial liens.  The statute excludes a judicial lien (or, to quote the statute, a "lien acquired in any judicial proceeding") from the definition of "lien."  <u>See</u> D.C. Code § 50-1201(f)(2) (including security interests in definition of "lien" but excluding judicial liens).  The statute then addresses the priority of liens (that is, such liens as security interests but *not* judicial liens) in D.C. Code § 50-1203.

common law obviously provides the answer--the lien that first
became valid prevails.

4.

McCarthy argues that Comment No. 5 to UCC § 9-311
demonstrates that his analysis is correct.  Comment No. 5 states:

> [S]tatutes under which perfection *does not occur until
> a certificate of title is issued* will create a gap
> between the time that the goods are covered by the
> certificate under Section 9-303 and the time of
> perfection.  If the gap is long enough, it may result
> in turning some unobjectionable transactions into
> avoidable preferences under Bankruptcy Code Section
> 547.  (The preference risk arises if more than 10 days
> (or 20 days, in the case of a purchase-money security
> interest) passes between the time a security interest
> attaches (or the debtor receives possession of the
> collateral, in the case of a purchase-money security
> interest) and the time it is perfected.

[Italics added.]  The Comment goes on to recommend a legislative
amendment to the certificate of title statute providing for
perfection to occur upon receipt of the application for a
certificate of title.  McCarthy argues that there has been no
such amendment, and that the court should not disregard the plain
provisions of the UCC requiring compliance with the requirements
of § 50-1201 *et seq.* as currently written.  However, Comment No.
5 simply is inapplicable to the District of Columbia statute, as
under § 50-1201 *et seq.*, perfection *does* occur prior to the
issuance of a certificate of title.

5.

McCarthy finally argues that under the court's common law
perfection approach, there is no apparent time limit in which a
secured party must apply for a certificate of title, let alone
have it issued, in order to receive preference protection, and
that a lender would never have an incentive to submit an
application for a certificate of title in order to protect its
security interest against subsequent judicial liens or security
interests.

Although none are identified by McCarthy, the court will
assume that there are reasons why a state would want a
certificate of title to be issued promptly after completion of a
sale of a motor vehicle.  It thus might be sound policy to
encourage prompt applications for certificates of title by
requiring filing of such an application in order to perfect a
security interest in a motor vehicle, which would have the effect
of displacing the common law rule.  However, the existence of
policy grounds for a legislature to elect to displace the common
law rule does not equate with an actual act of displacing the
rule.  Moreover, McCarthy's argument disregards District of
Columbia statutory provisions which encourage prompt filing of an

application for a certificate of title.[15]

## VI

As discussed above, BMW's security interest attained perfected status upon the debtor's acquiring the motor vehicle and until the issuance of the certificate of title.  Once the certificate of title issued, BMW's security interest was perfected under § 50-1201 by way of being noted on the certificate of title prior to its issuance.  Accordingly, BMW has had a continuously perfected security interest from the moment title passed to the debtor.  <u>See</u> UCC § 9-308(c) ("A security interest . . . is perfected continuously if it is originally perfected by one method under this article and is later perfected by another method under this article, without an intermediate period when it was unperfected.").  The term "method" is sufficiently broad to include perfection via being first in time and entitled to priority under the common law rule when that rule has not been displaced.

---

[15]  D.C. Code § 50-1501.2(c)(3) provides that registration of a motor vehicle in the District requires that the owner have a valid certificate of title, and D.C. Code § 50-1501.04, with an exception for a "special use certificate" (and other exceptions of no relevance here), makes it unlawful to operate a motor vehicle if it is not registered.  While the owner may temporarily operate the vehicle pursuant to a "special use certificate" and "special use identification tags" under D.C. Code § 50-1501.02(5)(A), those are restricted to a 30-day duration.  Accordingly, the statutory scheme has built-in incentives for a certificate of title to be applied for promptly.

VII

McCarthy could argue that once the certificate of title was
outstanding, only notation of the security interest on the
certificate of title could perfect the security interest, and
that because that occurred within 90 days of the filing of the
petition a preferential transfer occurred, and the notation
occurred more than 20 days after the debtor obtained possession
of the vehicle, § 547(c)(3) cannot be deemed applicable.  In
other words, the issue remains whether § 9-308(c) amounts to an
impermissible retroactive perfection provision under _Fink_, 522
U.S. at 220.

_Fink_ does not apply here.  _Fink_ dealt with a case in which
there was a period of time when, under state law, the security
interest was not perfected and a judicial lien could have been
obtained against a motor vehicle, and the later perfection of the
lien beyond the 20-day mark of § 547(c)(3) could not bring the
security interest into the safe harbor of § 547(c)(3) via the
state law's provision for retroactive effectiveness of the
perfection.  Here, in contrast, there never was a period when the
security interest was not perfected.  At every step, BMW's
security interest was perfected and BMW had taken steps to assure
that it would remain perfected.  Its security interest is thus
not avoidable as a preference.  See _Blasbalg v. Tarro (In re_
_Hyperion Enters., Inc.)_, 158 B.R. 555, 565-66 (D.R.I. 1993).

23

Had BMW allowed that perfection to lapse, by not causing the security interest to be noted on the certificate of title when it first issued, a different case would be presented.[16]   However, here there was never any such lapse in perfection.

VIII

States tend to have one of three statutory arrangements for using certificate of title statutes to perfect security interests in vehicles.   In re Farnham, 57 B.R. 241, 245 (Bankr. D. Vt. 1986).   The "indication," "delivery," and "dual" schemes are as follows:

> Presently, twenty-two states and the District of Columbia have enacted certificate of title systems that make the perfection event either the indication of the lien or the certificate of title or the issuance of the certificate of title after indication.   Twenty-four states have certificate of title laws that make mere delivery of the appropriate papers and fees to the proper officer the act of perfection, even if the certificate of title is never noted or issued. . . . Finally, three states have "dual system" certificate of title perfection laws that require both the filing of a financing statement and the use of the certificate of title.

Id. at 245 (citing Note, Secured Transactions: Certificate of Title--Delivery or Notation?  The Lender's Dilemma, 37 Okla. L. Rev. 618, 622 (1984) (footnotes omitted)).

---

[16]   See Anderson v. Blackman (In re Karisda, Inc.), 90 B.R. 196 (Bankr. D.S.C. 1988) (lapse in perfection due to expiration of financing statement without filing of continuation statement; filing of second financing statement within 90 days before petition date was a preferential transfer).   But see David Gray Carlson, Security Interests in the Crucible of Voidable Preference Law, 1995 U. Ill. L. Rev. 211, 232-34.

There are decisions under other state statutes adopting an
*exclusively* "indication" means of perfection which would support
McCarthy's position here if the District's statute were of the
same character.  In <u>Union Bank & Trust Co., Erie v. Baker (In re
Tressler</u>), 771 F.2d 791 (3rd Cir. 1985), the court dealt with a
Pennsylvania motor vehicle statute which provided in what the
court of appeals characterized as unambiguous language that "[a]
security interest is perfected by notation thereof by the
department on the certificate of title for the vehicle" and
another provision of the motor vehicle statute provided that the
method thereby provided for perfecting a security interest was
exclusive.  The court of appeals offered this colorful language:

> We are unpersuaded by the bank's argument that the
> Department's lack of efficiency in issuing titles
> should somehow provide the basis for an exception to
> the federal 10 day perfection requirement [in an
> earlier version of the Bankruptcy Code] .  The solution
> to this problem, if such a problem indeed exists,
> should be pursued in Harrisburg by seeking appropriate
> legislative action, rather than by seeking, in this
> court, an exception to the clear congressional command
> in § 547(c)(3)(B).

<u>Tressler</u>, 771 F.2d at 793.[17]  If the District's motor vehicle
statute were identical to the statute involved in <u>Tressler</u> or to
the Tennessee statute involved in several decisions reaching a

---

[17]  Not surprisingly, in 1990 the Pennsylvania legislature
amended its code to create a "delivery" statute to prevent this
dangerous gap in time.  <u>See</u> 75 Pa. Cons. Stat. Ann. § 1132(b);
<u>First Nat'l Bank of Penn. v. Cech (In re Ambrose)</u>, 148 B.R. 244,
247 (Bankr. W.D. Pa. 1992).

similar conclusion,[18] the court would unhesitatingly follow that decision, and reject BMW's argument that <u>Huenekens v. Abruzzese (In re Abruzzese)</u>, 252 B.R. 341 (Bankr. E.D. Va. 1999), requires disregard of a plainly written statute making notation the exclusive means of perfection.

However, the Pennsylvania statute at issue in <u>Tressler</u> and the Tennessee statute just mentioned, are distinguishable from the District's certificate of title statute which purports only to set requirements for perfection when a certificate of title is outstanding.  Prior to issuance of the certificate of title, the District's statute does not proscribe perfection via the common law rule.

IX

A judgment follows dismissing this proceeding.

<u>[<em>Signature appears above</em>]</u><br>
S. Martin Teel, Jr.<br>
United States Bankruptcy Judge

---

[18]   <u>See Waldschmidt v. Smith (In re York)</u>, 43 B.R. 36 (Bankr. M.D. Tenn. 1984) (no perfection in absence of notation of the lien on the title even if a properly submitted application is lost by officials of the State of Tennessee and the applicant is blameless); <u>Walker v. Ford Motor Credit Co. (In re Clark)</u>, 112 B.R. 226, 230 (Bankr. E.D. Tenn. 1990) (no relation back if application has been rejected); <u>Keep Fresh Filters, Inc. v. Reguli</u>, 888 S.W.2d 437, 445 (Tenn. Ct. App. 1994) ("Merely submitting an application or a certificate of title or to note a lien on a certificate of title does not result in perfection of a security interest if the filing does not lead to a recordation of the lien on the title.").

26

Copies to:

Kevin R. McCarthy, Esq.

Ronald G. DeWald, Esq.

U.S. Trustee